UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATTY A. WALLIS,

               Plaintiff,

       V.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**REPORT AND**
**RECOMMENDATION**

09-CV-1075
(TJM/VEB)

## I. INTRODUCTION

In September of 2006, Plaintiff Patty A. Wallis applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she is unable to work due to a variety of physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, through her attorneys, DeSantis & DeSantis, Michael V. DeSantis, Esq., of counsel, commenced this action on September 22, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On July 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for SSI benefits and DIB on September 8, 2006,[1] alleging disability since March 8, 2004.[2] (T at 90-98).[3]  The applications were denied initially. (T at 61-64).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on December 15, 2008, in Utica, New York, before ALJ F. Patrick Flanagan, Jr. Plaintiff appeared with her attorney and testified. (T at 21-58).

On February 19, 2009, the ALJ issued a decision denying Plaintiff's applications. (T at 12-20).  Plaintiff filed a timely request for review by the Appeals Council. The ALJ's decision became the Commissioner's final decision on July 23, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 4-8).

Plaintiff, through counsel, commenced this action on September 22, 2009. (Docket No. 1).  The Commissioner interposed an Answer on January 7, 2010. (Docket No. 7). Plaintiff filed a motion for consideration of additional evidence (Docket No. 9), which was denied on January 20, 2010, by the Honorable David E. Peebles, United States Magistrate Judge. (Docket No. 10).  Plaintiff filed a supporting Brief on February 19, 2010.  (Docket No. 11).  Defendant filed a Brief in opposition on May 5, 2010. (Docket No. 14).

---

[1] The ALJ's decision indicates an application date of August 17, 2006 (T at 12), which appears to be inconsistent with the record, which indicates an application date of September 8, 2006. It does not appear that this apparent minor discrepancy had any material bearing on the case.

[2] Plaintiff originally indicated an alleged onset date of March 8, 2003, but amended that date during the hearing before the ALJ to March 8, 2004. (T at 32).

[3] Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted and Plaintiff's motion be denied.

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ found that Plaintiff last met the insured status requirements of the Act on March 31, 2008. He further concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. The ALJ determined that, through the date last insured, Plaintiff had the following medically determinable impairments considered "severe" under the Act: degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome status post bilateral release surgeries, status post trigger finger release,

---

substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

status post bicubital tunnel release with ulnar nerve transposition, fibromyalgia, and probable reflex sympathetic dystrophy. (T at 14).

However, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 15).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work. (T at 15).  He found that Plaintiff was unable to perform her past relevant work. (T at 19).  Considering Plaintiff's age (36 years old on the date last insured), education (at least high school), and RFC (sedentary work), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 19).

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act from the alleged onset date through the date last insured. (T at 20).  As noted above, the ALJ's decision became the Commissioner's final decision on July 23, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 4-8).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of that position.  First, Plaintiff challenges the ALJ's determination concerning her residual functional capacity. Second, she contends that the ALJ erred in assessing her credibility.  Third, Plaintiff argues that a remand is warranted based upon new evidence.  Fourth, she asserts that the ALJ erred by relying on the Grids. Each argument will be addressed in turn.

### a.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence. In support of this argument, she points to a July 2008 report from Dr. Michael Tan, her treating physician, in which he noted a diagnosis of carpal tunnel syndrome, trigger fingers, and reflex sympathetic dystrophy, complex regional pain syndrome. (T at 394). In this report, Dr. Tan opined that Plaintiff was "totally disabled." (T at 395).

Plaintiff also notes a January 2008 diagnosis by Dr. Rathika Martyn, a rheumatologist, who diagnosed Plaintiff with fibromyalgia and reflex sympathetic dystrophy syndrome. (T at 408). Dr. Martyn also indicated that Plaintiff had reduced range of motion of her fingers and wrists. (T at 408). Dr. Ronald Horvath, an orthopedic surgeon, and one of Plaintiff's treating surgeons, opined in May of 2006 that Plaintiff could not engage in the

7

repetitive use of her upper extremities. (T at 345).  Plaintiff argues that the ALJ gave insufficient weight to these assessments in connection with his RFC determination.

The ALJ concluded that, as of the date last insured, Plaintiff retained the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567 (a).  This Court finds that the ALJ's decision in this regard was supported by substantial evidence.

SSR 96-9p provides, in pertinent part, as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

The record in this case sufficiently supports the ALJ's finding that Plaintiff is capable of performing sedentary work.  Although Dr. Horvath did indicate in his May 2006 report that Plaintiff could not engage in the repetitive use of the upper extremities, he also opined that she was capable of working in a light duty capacity, with frequent lifting of 10 pounds. (T at 345).  Dr. Horvath recommended a six-week period of aqua therapy, but found no need for surgery or physical therapy and concluded that there were no medical conditions that would impede recovery. (T at 345).  Moreover, in a January 2007 report, Dr. Horvath made no mention of any limitations with regard to the repetitive use of the upper extremities and indicated that Plaintiff was capable of sedentary work with lifting limited to 10 pounds.

(T at 339).  Dr. Horvath opined that no surgery or treatment was necessary, except for a home exercise program. (T at 339).

Dr. Martyn, Plaintiff's rheumatologist, submitted a residual functional capacity assessment dated December 5, 2008, in which he opined that Plaintiff was capable of performing sedentary work.  (T at 446).  The ALJ afforded this finding "great weight." (T at 19).

With regard to Dr. Tan's "total disability" assessment, the ALJ was not obligated to give that finding controlling weight.  Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion only when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).  In this case, the ALJ was not obligated to give Dr. Tan's "total disability" assessment controlling weight for the following reasons:

First, the determination of disability is a matter reserved to the Commissioner and the ALJ is not obligated to accept the assessment of a claimant's treating physician or any other source as to that ultimate question. See 20 C.F.R. § 404.1527 (e)(1); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  Second, Dr. Tan's summary statement was contradicted by the findings of Dr. Martyn and Dr. Horvath, both of whom opined that Plaintiff was capable of performing at least sedentary work.  Third, Dr. Tan was re-contacted and asked to provide a residual functional capacity assessment, which he supplied in January of 2009. In that assessment, Dr. Tan opined that Plaintiff could perform sedentary work. (T at 431). This obviously contradicts his earlier "total disability" finding and provides additional support

9

for the ALJ's decision not afford that earlier finding controlling weight.

Further support for the ALJ's RFC assessment is found in the report of Kalyani Ganesh, a consultative examiner.   Dr. Ganesh indicated that Plaintiff had no gross limitation as to sitting, standing, or walking. He opined that she had a moderate degree of limitation with respect to lifting, carrying, pushing and pulling. Dr. Ganesh indicated that Plaintiff was able to perform all fine motor activity. (T at 329).  The ALJ afforded "great weight" to this assessment, which was consistent with an ability to perform sedentary work. (T at 19).

In February of 2007, a State Agency review consultant reviewed Plaintiff's medical records and opined that she was capable of performing light work.  (T at 380).  The consultant determined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk/sit for 6 hours in an 8-hour day, and had no manipulative limitations.  (T at 377-78).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the

weight of the evidence, including the assessments of the treating orthopedic surgeon and rheumatologist.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Lastly, the ALJ's decision was supported by Plaintiff's activities, which contradicted her claims of disabling pain.  In February 2008, Plaintiff was injured while riding a snowmobile.  (T at 37, 385).  At the hearing held before the ALJ, Plaintiff testified that she had been a passenger in a car trip to West Virginia to visit relatives during the preceding year. (T at 28).  Taking part in a high speed, inherently tremulous recreational activity certainly indicates an ability to perform a level of physical activity beyond the level typically associated with total disability.  In addition, the trip to West Virginia indicates an ability to sit for an extended period of time.

In light of the foregoing, this Court finds that the ALJ's determination that Plaintiff retained the RFC to perform the full range of sedentary work was supported by substantial evidence and in accord with applicable law.

### b.    Credibility

Credibility issues are generally associated with complaints of pain.  Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

11

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff]

12

take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5.    Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

6.    Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that she experiences numbness in her hands, nearly constant pain, and occasional discoloration of the skin on her hands. (T at 34-35). She has difficulty interacting with others, frequently cries, and occasionally feels as though she does not want to leave her home. (T at 35, 52). Plaintiff explained that she experiences pain throughout her body. (T at 37, 51-52). At the hearing, Plaintiff stated that her pain was a 6 on a scale of 1-10. (T at 41). Plaintiff testified that she experiences tear-inducing pain 3-4 times per week and that her pain level never drops below a 6 out of 10. (T at 41-42). The pain is a "stabbing type pain," aggravated by cold weather and prolonged standing, sitting, or walking. (T at 42, 51). Plaintiff explained that she would need to change positions every 15 to 20 minutes when sitting or standing and could not walk very far. (T at 44, 55). She stated that she never lifts more than 5 pounds and explained that she could only sit for about an hour at a time. (T at 44, 55). Plaintiff testified that she can attend to her personal needs, but needs help putting on jewelry. (T at 49). She also described having suicidal thoughts and respiratory problems related to asthma. (T at 52-53).

13

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not fully credible. (T at 18).  This Court finds that the ALJ's credibility assessment was supported by substantial evidence.

As noted above, Plaintiff's treating physicians opined that she was capable of performing at least sedentary work, which opinions are inconsistent with her allegations of disabling pain. (T at 339, 345, 431, 446).  A treatment note from August of 2005 indicated that Plaintiff had joined a gym and become more active walking and riding a bicycle. (T at 245).  A March 2004 note referenced a history of non-compliance with treatment and being dishonest with medical providers. (T at 260).  As noted above, the record indicates that Plaintiff went snowmobiling on at least one occasion (T at 37, 385) and was able to take a lengthy automobile trip, activities inconsistent with the extreme pain alleged by Plaintiff. (T at 28).

With regard to Plaintiff's complaints of psychological problems, the ALJ discounted the credibility of these allegations and concluded that Plaintiff's mental impairments did not cause more than minimal limitation in her ability to perform work-related activities.  This Court believes that while the ALJ's overall credibility assessment was adequately supported, the ALJ committed error by finding that the mental impairments were not "severe" impairments as defined under the Act.

As discussed below, the record indicates that Plaintiff's mental impairments cause more than a *de minimus* impact on her ability to perform basic work-related activities. See 20 C.F.R. § 404.1512(a).  Thus, the ALJ should have found that Plaintiff's mental

14

impairments were "severe" at step two of the sequential evaluation process. See Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999)(noting that a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work'")(quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

However, this error was harmless.  Although he made an initial finding that the mental impairments were not severe, the ALJ nevertheless continued the evaluation process, reciting and applying the appropriate standard to evaluate Plaintiff's mental residual functional capacity at steps three and four of the process.  (T at 15).  The ALJ's conclusion that Plaintiff did not have marked or extreme limitations in any of the broad categories found in paragraph B of the adult mental disorders set forth in §12.00 of 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings") was supported by substantial evidence.

As noted by the ALJ, Plaintiff's history of treatment for mental health issues has been sporadic and limited. (T at 19).  Plaintiff was terminated from a counseling program due to multiple missed appointments. (T at 448, 452-53).  Dr. Surendra Johri evaluated Plaintiff and opined that she had a Global Assessment Functioning ("GAF") score of 55. (T at 451).  Such a score indicates a moderate level of impairment. See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed.2000) (listing scores from 51 through 60 as indicating "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, conflicts with peers or co-workers)").

Dr. Jeanne A. Shapiro, a consultative examiner, found Plaintiff to be cooperative, with "adequate" social skills. (T at 334).  Dr. Shapiro indicated that Plaintiff appeared to be

capable of understanding and following simple instructions and directions; performing simple and complex tasks with supervision and independently; and maintaining attention and concentration for tasks. (T at 335).  Dr. Shapiro did note that Plaintiff had some limitations and indicated that Plaintiff's psychiatric symptoms might interfere with her functioning at times and in certain situations. (T at 335).  However, Dr. Shapiro opined that Plaintiff was likely to find symptom relief if she was provided with appropriate intervention and support. (T at 336).

A State Agency review consultant reviewed Plaintiff's medical records and concluded that she had mild restrictions with regard to activities of daily living, mild difficulties maintaining social functioning, and moderate difficulty maintaining persistence, concentration, and pace.  (T at 368).  The consultant concluded that there were no psychiatric limitations that would interfere with Plaintiff's ability to perform work. (T at 374).

As such, while the record does indicate more than minimal limitations imposed by Plaintiff's mental impairments, the ALJ's overall findings in this regard are supported by substantial evidence.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility

16

assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### c.   New Evidence

The Social Security Act provides that a district court may remand a case to the Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. See 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

This type of remand, commonly referred to as a "sentence six remand," is only appropriate if new, non-cumulative evidence presented to the District Court should be considered by the Commissioner *and* if the claimant can establish good cause for having failed to present the evidence during the original administrative proceedings. See Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir.1991).

In the Second Circuit, courts employ a three-prong test to determine whether a sentence six remand is warranted. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988). First, the evidence must be "new" and not merely cumulative of evidence in the administrative

record. Id. (citing Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833 (3d Cir.1984)). Second, the new evidence must be "material," *i.e.* "it must be relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir.1975)). The "materiality" prong further requires a finding that there is a reasonable possibility that the new evidence would have changed the outcome before the Commissioner. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir.1991). Third and finally, the plaintiff must demonstrate good cause for failing to present the evidence earlier. Lisa, 940 F.2d at 43.

In this case, Plaintiff seeks a remand for consideration of evidence related to complications arising from gastric bypass surgery.  Although the surgery was performed in November of 2008 (prior to the ALJ's decision), the medical records relate to complications arising several months after the ALJ's decision. (Docket 9-1).

In January of 2010, Plaintiff filed a letter motion requesting consideration of this evidence. (Docket No. 9).  The Honorable David E. Peebles, United States Magistrate Judge, denied the motion.  (Docket No. 10).  Judge Peebles concluded that "the evidence in question clearly relates to complications experienced well after the critical date of the ALJ's determination." (Docket No. 10, at p. 4).  Judge Peebles noted that Plaintiff could file a new application for benefits based on the apparent changed circumstances.  In addition, he held that any further argument concerning the consideration of the evidence in this particular case would need to be supported by some showing that the new evidence related to Plaintiff's condition prior to the date of the ALJ's decision.  (Docket No. 10, at p. 4).

Plaintiff's Brief, filed after Judge Peebles rendered his decision, provides no argument or authority that causes this Court to question Judge Peebles's well-reasoned

18

ruling in any respect.  In addition, Plaintiff has not offered any rationale to even arguably suggest that the new evidence relates to her condition during the relevant time period. Accordingly, this Court recommends that Plaintiff's request for a remand on this basis be denied.

### d.    Use of the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, applying Medical-Vocational Rule 201.28, the ALJ found that Plaintiff was not disabled.  (T at 20).  Plaintiff contends that this finding was in error because the ALJ did not give adequate consideration to her non-exertional impairments.  However, the ALJ did not include any non-exertional impairments in his RFC determination.  As such, he was not obligated to include them as a factor when consulting the Grids.

Moreover, the Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Bapp, 802 F.2d at 603.  Rather, exclusive reliance on the Grids will only be deemed inappropriate where the non-exertional impairments "*significantly* limit the range of work permitted by his exertional limitations." Id. at 605-06 (emphasis added).  "A claimant's work capacity is 'significantly diminished' if there is an

20

'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. at 606.  Given the evidence discussed above concerning Plaintiff's mental impairments, there is sufficient reason to conclude that those impairments do not significantly limit the range of work permitted by her exertional limitations.  Although there is some evidence of mild or moderate limitations imposed by Plaintiff's mental impairments, there is no indication that those limitations so narrow Plaintiff's possible range of work so as to deprive her of a meaningful employment opportunity.  Accordingly, this Court finds no reversible error in connection with the ALJ's reliance upon the Grids.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED and that Plaintiff's Motion for Judgment on the Pleadings be DENIED.

Respectfully submitted,

21

Dated:   August 5, 2010
        Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

22

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

August 5, 2010

Victor E. Bianchini
United States Magistrate Judge